Filed 8/24/20  Anderson v. Kids Included Together CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| CRISTIE ANDERSON,<br><br>   Plaintiff and Appellant,<br><br>   v.<br><br>KIDS INCLUDED TOGETHER,<br><br>   Defendant and Respondent. | D074368<br><br><br>(Super. Ct. No. 37-2015-00020422- CU-BC-CTL ) |

APPEAL from a judgment of the Superior Court of San Diego County, Eddie C. Sturgeon, Judge.  Affirmed.

Christie Anderson, in pro. per., for Plaintiff and Appellant.

Wilson, Elser, Moskowitz, Edelman & Dicker, John R. Clifford and Kelly A. Van Nort for Defendant and Respondent.

Cristie Anderson sued Kids Included Together (KIT) for a variety of employment related causes of action.  The matter proceeded to a bench trial where the superior court found in favor of KIT on all issues.  Most importantly to Anderson's claims, the court found that she was an independent contractor, not an employee of KIT.  After her trial concluded,

our high court issued its opinion in *Dynamex Operations W. v. Superior Court* (2018) 4 Cal.5th 903 (*Dynamex*). Among other issues Anderson raises on appeal, she asserts that we must reverse the superior court's judgment and grant a new trial to require KIT to prove, under *Dynamex*, that Anderson was not an employee.

As we explain below, we conclude that *Dynamex* does not apply to Anderson's action against KIT. Additionally, we determine the rest of the issues raised by Anderson in her opening brief are without merit. We therefore affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

*An Appellant Must Accurately Cite to the Record for Factual Assertions*

Initially, we observe that Anderson, as an in propria persona litigant, is "entitled to the same, but no greater, rights than [a] represented litigant[] and [is] presumed to know the [procedural and court] rules. [Citations.]" (*Wantuch v. Davis* (1995) 32 Cal.App.4th 786, 795.) It is an appellant's duty to support arguments in his or her briefs by references to the record on appeal, including citations to specific pages in the record. (*Duarte v. Chino Community Hospital* (1999) 72 Cal.App.4th 849, 856 (*Duarte*).) Arguments not supported by citations to the record are generally considered forfeited. (*United Grand Corp. v. Malibu Hillbillies, LLC* (2019) 36 Cal.App.5th 142, 146 (*Malibu Hillbillies*).) Here, Anderson filed a 60 page brief. At times, she cites to the record, but she also cites to exhibits that were not admitted at trial and, thus, not part of the record. Such an approach does not comply

with California Rules of Court, rule 8.204(a)(1)(C)[1] and rule 8.204(a)(2)(C)[2] and only serves to confuse the issues that are properly before us. Because part of her appeal involves a substantial evidence challenge, the lack of support in the record for her factual assertions is problematic and makes it difficult to evaluate her claims. That said, the record does contain transcripts of the trial, and KIT has provided a cogent summary of the salient facts in its respondent's brief that aids in the evaluation of Anderson's claims.

*The Parties and the Litigation*

KIT is a nonprofit organization that provides training and support to businesses, schools, military, and community programs regarding how to incorporate and include children with disabilities and special needs into youth programs. Anderson provided certain accounting services to KIT from 2003 to 2012. She executed an Independent Contractor Agreement (ICA) in March 2012. KIT terminated that agreement on June 18, 2013, and Anderson brought suit.

Anderson filed her initial complaint on June 17, 2015. She amended the complaint twice, with the operative complaint (the second amended

---

[1] California Rules of Court, rule 8.204(a)(1)(C) states, in relevant part: "(1) Each brief must: [¶] . . . [¶] [¶] . . . [¶] (C) Support any reference to a matter in the record by a citation to the volume and page number of the record where the matter appears. If any part of the record is submitted in an electronic format, citations to that part must identify, with the same specificity required for the printed record, the place in the record where the matter appears."

[2] California Rules of Court, rule 8.204(a)(2)(C) states, in relevant part: "(2) An appellant's opening brief must: [¶] . . . [¶] [¶] . . . [¶] (C) Provide a summary of the significant facts limited to matters in the record."

complaint) being filed on March 18, 2016.[3]  In that complaint, Anderson alleged 11 causes of action, consisting of:  (1) retaliation in violation of Labor Code section 1102.5; (2) wrongful termination in violation of public policy in violation of 18 U.S.C. section 1031(h); (3) retaliation in violation of 31 U.S.C. section 3730(h); (4) wrongful termination in violation of public policy (Bus. & Prof. Code, § 17200 et seq.); (5) breach of written contract; (6) breach of oral contract; (7) promissory estoppel; (8) quasi-contract; (9) quantum meruit; (10) failure to pay wages upon termination (Lab. Code, § 201); and (11) intentional infliction of emotional distress.  The gravamen of Anderson's claims was that KIT terminated her employment because she brought to light fraudulent billing under a contract between KIT and the Department of Defense (DOD).  She also claimed that she was not paid for certain work she provided in supporting KIT's contract with the DOD.  Inherent in all of Anderson's causes of action was her contention that she was an employee of KIT not an independent contractor.

The parties engaged in discovery with KIT propounding written discovery to Anderson on April 15, 2016.  When Anderson did not provide any responses, KIT moved to compel Anderson to respond.  The superior court granted KIT's unopposed motion.  No party appealed any discovery order in this matter.

*The Trial*

This matter proceeded to a bench trial beginning on March 19, 2018. Anderson testified during her case in chief.  She obtained a Bachelor of Science degree in accounting from the University of Iowa in 1984.  Since 1985, Anderson worked exclusively in the accounting field.  Beginning in

---

[3]    KIT successfully demurred to the first amended complaint, but Anderson was granted leave to amend.

4

1996, Anderson worked as a consultant, providing accounting services to several companies.

In 2003, Anderson began providing accounting services to KIT. Anderson became acquainted with KIT through her childhood friend, Sara Couron, a KIT employee. KIT was just one of multiple companies to which Anderson provided her services. In 2003 and 2004, Anderson was working on KIT tasks an average of about 13 or 14 hours a month, but the actual hours worked "varied tremendously" depending on the undertaking involved. For example, if Anderson was helping with an audit, her time commitment would be greater than usual. At that point, KIT was paying Anderson $25 an hour.

In 2005, Anderson became "very busy" and "needed to go back and make more money." Therefore, she did not work for KIT in 2005. In fact, she referred someone else to assist KIT with accounting tasks in 2005 and 2006. Yet, in 2006, Anderson helped KIT with its audit and was paid $750 for her services. She then entered into a flat fee arrangement with KIT and was paid $500 a month from July to October 2006 and $750 a month from November to December of that same year. By December 2006, Anderson was working about 15 to 20 hours a month for KIT, but she continued to work "for a lot of other people" at that time.

In 2007, Anderson increased the number of hours she dedicated to KIT to about 20 or 25 a month. Her pay was increased to $1,000 per month at that time. She maintained the same pay through 2008 and 2009 although she worked more hours because KIT signed a contract with the Navy.

Toward the end of 2010, Anderson was working about 30 to 35 hours a month on KIT projects. At that time, she was still providing services to another company in addition to KIT.

5

In July 2011, KIT began paying Anderson $1,500 per month. Also, Anderson stated that she entered into an oral agreement whereby she would get paid an additional $50 an hour for the "extra" work she was doing regarding a contract KIT entered with the DOD.[4] However, Anderson only submitted a single invoice for the extra DOD work, which she provided KIT "the day before [she] knew [she] was being let go." The invoice covered work that Anderson claimed to have completed over the past two years or so. Anderson admitted she is "not a very good biller" and KIT put her "on a flat fee" "because [she] often bill[ed] at one year at a time."

Anderson performed most of her work for KIT without a contract. However, on March 18, 2012, she signed the ICA, which identified Anderson as an independent contractor. Although Anderson testified she did not "know there was legal definition," she "absolutely" viewed herself as an independent contractor "through the day [she] left" KIT. She also signed at least three Internal Revenue Service 1096 Forms on behalf of KIT and identified her title as "Financial Consultant." In addition, as late as May 29, 2013, in an email to KIT's CEO and Couron, Anderson identified herself as KIT's "outside accountant" and "a financial consultant to KIT."

Anderson admitted she did not have to work any set hours at KIT. Instead, Anderson was told what tasks needed to be completed and by when. She did not keep track of her time. She was not required to be in KIT's office. Indeed, although KIT's office is in San Diego, California, Anderson, for a

---

[4]    Throughout the trial, the parties referred to a DOD contract or a contract between KIT and the DOD. It is unclear if the DOD is an actual party to that contract as no party has cited to the actual contract in the record. There was testimony that the subject contract with actually administered by the Navy or that it is funded by the Office of Special Needs. In any event, we will refer to the contract as between KIT and the DOD throughout this opinion for convenience and to be consistent with the parties.

time, was providing services for KIT while she was in Florida. She would "dial into KIT." Anderson did not receive any benefits from KIT. She did not have a KIT email address, and she did not have any KIT business cards.

When Anderson was physically present at KIT's office, she usually sat at Couron's desk.[5] She used Couron's computer and the QuickBooks and Excel software on that computer. Anderson used KIT's copier when she was working at the office, and KIT reimbursed her for 1099 forms that she purchased.

Anderson's conflict with KIT began with KIT's contract with the Navy. Beginning in 2008, KIT began providing its services to the Navy in San Diego. Two years later, KIT expanded its services to all of the military branches and eventually contracted with the DOD in 2011. Under the terms of the contract and subsequent modifications, KIT provided eLearning CLIN (Contract Line Item Number) for a firm, fixed price, which meant KIT was to bill on a per lot basis regardless of use. The contract was renewed for another four year term.

Anderson did not assist KIT in negotiating its contract with the Navy or the DOD. Anderson also did not assist KIT in implementing the services KIT provided to the Navy and later the DOD. Anderson did not sign any of the bills submitted to the DOD.

In 2011, Anderson began to gather and enter travel related expenses, for servicing KIT's contract with the DOD, as part of the accounting services she provided to KIT. Couron then incorporated these expenses into invoices KIT sent to the DOD. Other than the task of entering the travel expenses, Anderson had no role in billing for services KIT provided to the DOD.

---

[5] Through September 2012, Couron was working part time for KIT, and she was out of the office two days a week.

Although Anderson did not participate in billing the DOD for KIT's services, she believed KIT was improperly billing the DOD. KIT's invoices were submitted to the DOD contract officer representative for review and approval. The original contract officer representative was Rick Trimmer. In June 2013, Dianne Brewer was the contract officer representative. Brewer confirmed to KIT it was billing properly for the eLearning CLIN and this information was then shared with Anderson. And Anderson never spoke with Trimmer or Brewer about KIT's billing.

Anderson also had a falling out with Couron. In January 2012, Anderson complained to KIT's CEO at the time, Jeff Meyers, that Couron was not qualified for her position at KIT. In April 2013, the disagreements between Anderson and Couron intensified. Anderson yelled at Couron about KIT spending money on an office remodel. KIT's CEO Torrie Dunlap become concerned about Anderson's conduct toward a KIT employee and called a meeting on May 3, 2013. At the meeting, Anderson complained about how KIT spent its money and billed the DOD for the entire eLearning CLIN. Anderson believed that the entire DOD contract was indefinite delivery/indefinite quantity (IDIQ),[6] and KIT attempted to clarify Anderson's misunderstanding of the terms of the contract. To this end, Dunlap explained in detail how the DOD contract was modified and various items in the contract were invoiced differently, how the billing was reviewed and approved by the DOD contract officer representative, and how the eLearning CLIN was a firm fixed price and billed per lot.

Following the meeting on May 3, 2013, Couron attempted to further explain fixed price and IDIQ to Anderson. In addition, KIT contacted Brewer

---

[6] IDIQ refers to a type of billing in a contract where tasks or items in a contract are billed as they are used or completed.

and once again confirmed KIT was billing properly for the eLearning CLIN and other items in the contract. In mid-May, a subcommittee of the KIT Board met to evaluate the billing. KIT informed Anderson that its Board evaluated the issue and was satisfied the billing was correct.

On May 29, 2013, Anderson emailed Dunlap and Couron. Among other issues, Anderson reiterated that she "did not believe that [Couron] had a sufficient skill set in the financial arena to deal with the large [DOD] contract and financial issues KIT faces." In addition, Anderson made clear that she had no knowledge whether KIT was billing improperly under the DOD contract. Instead, she suspected there might be "possible billing errors." Anderson wrote:

> "I stated that since I had been given no role in the [DOD] contract negotiation or billing process, excepted for the travel and shipping, I did not want to be held responsible if things were being billed incorrectly. . . . [¶] . . . I spent time looking at the eLearning example I used in the meeting (see attached) and am even more convinced that the billing needs to be reviewed. The eLearning CLIN does not have an estimate by it but neither does the CLIN for the conference and that was not a guaranteed payment. The material nature of the possible billing errors need to be addressed immediately."

In response to Anderson's May 29 email, Dunlap thanked Anderson and "commit[ted] to further inquiry." Dunlap again followed up with Brewer about billing under KIT's contract with the DOD. Dunlap sent an email to Brewer dated June 4, 2013, thanking Brewer "for taking the time to talk" to her about "potential issues regarding the billing." Dunlap wrote: "It was great to have clarification on the subscription piece of the contract, and I am glad there is no issue with how we have been handling it."

By June 12, 2013, Dunlap contacted Anderson in writing to tell her there were no issues of concern regarding the billing under KIT's contract

9

with the DOD. Anderson did not recall if she ever responded to Dunlap. However, Anderson was "95 percent" sure that she was no longer going to be working for KIT. Thus, the next day, she contacted Jovencia Williams of the DOD to bring to light problems she saw with KIT's contract with the DOD. Williams is a contracting officer with the DOD, and she signed the KIT contract in question on behalf of the entity administering the contract for the DOD.

In addition to the call on June 13, Anderson had a number of other calls with Williams. Anderson recorded these calls without Williams's permission.

During the calls with Anderson, Williams confirmed the eLearning CLIN was to be billed at a firm fixed price. She also explained to Anderson that KIT's invoices had been reviewed and approved by the contract officer representative. Although Williams was not aware of any billing errors, she invited Anderson to submit documentation to support Anderson's claim of fraudulent billing. Anderson never provided any such documentation.[7]

On June 18, 2013, Anderson met with Heather Stone, president of KIT's board of directors, and Dunlap. At the meeting, Anderson agreed that she was an independent contractor working with KIT. Also, Stone handed Anderson a letter indicating that KIT was terminating the ICA effective immediately. Along with the letter, Stone gave Anderson a check in the amount of $2,250 representing payment for six weeks of work. KIT paid the $2,250 in lieu of providing six week notice as required under the ICA. After Anderson was informed her services were no longer needed at KIT, she

---

[7] Apparently, during calls on June 13 and 14, Anderson told Williams that she knew the eLearning CLIN was firm fixed price and that "legally" KIT has done nothing wrong.

advised KIT that she had contacted the DOD about her concerns with KIT's contract with the DOD.

At the close of Anderson's case-in-chief, KIT moved for judgment, under Code of Civil Procedure 631.8, arguing that Anderson did not prove any of the claims she alleged. After hearing argument from the parties, the court found that substantial evidence showed Anderson was an independent contractor, and she did not prove she was entitled to any relief under any of the causes of action she pled. The court explained:

> "Obviously, this is a very serious case. The allegations are taken serious by this Court and by any pleadings, especially when you're dealing with claims that someone is defrauding the United States government. So it's a very serious matter.
>
> "The Court is going to make some very specific findings based on the evidence that has been presented. I just counted the pages that I took of notes. The Court has taken 17 pages of notes. The Court has read the motion for judgment by the defense and it will be [incorporated] into my decision also.
>
> "Let's talk about the law first. I will talk about the first—I am going to talk about five causes of action. That would be the first, the second, the third, the fourth, and the tenth.
>
> "It is clear under the law that to invoke those causes of action you must be an employee. The evidence presented in this court is substantial that Ms. Anderson was an independent contractor. The Court makes that specific finding that she was an independent contractor during her period of time at . . . . Kids Included Together. So that will resolve judgment for the defense as to causes of action one, two, three, and six.
>
> "Let's talk one, two, three, four, and ten—let's talk about the fifth, sixth, seventh, eighth, and ninth causes of action.

11

These are the oral contracts.  And I am going to go back for a minute.  I want to make another very specific finding.

"This Court gave great weight to Ms. Williams.  This was the—I am going to say DOD.  She was somewhere in there.  But she was clearly in this Court's mind the most knowledgeable about these contracts, how they work.  It is clear from her testimony that the final result, it started out one way, but two to three weeks later it became a firm fixed price.  That is very clear in the Court's mind.  Because of that and her testimony, this Court specifically finds that Kids Included Together did no inappropriate billing.

"As to causes of action five, six, seven, eight, nine, the Court understands the plaintiff's arguments.  The Court finds that there was no—it could have been invoiced, it wasn't invoiced until the very end.  The Court finds that it's speculative because based on the number of hours that was included, went over that time period like three to four years. The Court specifically finds that the plaintiff has not met her burden of proof for causes of action five, six, seven, eight, nine.

"The last thing the Court will talk about are punitive damages.  Clearly, this Court finds—and it is a heightened standard.  Burden of proof regularly is presumption of the evidence; for punitive damages, higher standard of clear and convincing evidence.  It's clear to this Court there was no malice, oppression, or fraud.

"Judgment in the total case will be for the defense.  Counsel, you will prepare the judgment."

Judgment was subsequently entered in KIT's favor, which included KIT being awarded $10,794.92 in costs and $7,500 in attorney fees.

DISCUSSION

I

WHETHER *DYNAMEX* APPLIES

A.  Anderson's Contentions

Anderson observes that our high court issued its opinion in *Dynamex*, *supra*, 4 Cal.5th 903 after her trial concluded.  She asserts that *Dynamex* changed the criteria for determining whether an individual was an employee or an independent contractor.  Anderson further argues that we must reverse the judgment in this matter and order the court to consider Anderson's claim that she was an employee under *Dynamex*.

B.  Analysis

For any appellant, "[a]ppellate briefs must provide argument and legal authority for the positions taken.  'When an appellant fails to raise a point, or asserts it but fails to support it with reasoned argument and citations to authority, we treat the point as waived.  [Citations.]' " (*Nelson v. Avondale Homeowners Assn.* (2009) 172 Cal.App.4th 857, 862 (*Nelson*).)  "We are not bound to develop appellants' argument for them.  [Citation.]  The absence of cogent legal argument or citation to authority allows this court to treat the contention as waived." (*In re Marriage of Falcone & Fyke* (2008) 164 Cal.App.4th 814, 830 (*Falcone*).)

On appeal, the judgment of the trial court is presumed to be correct. (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564 (*Denham*).)  All intendments and presumptions are made to support the judgment on matters as to which the record is silent.  (*Ibid*.)

13

Here, Anderson summarizes *Dynamex*, *supra*, 4 Cal.5th 903 and then asserts that it applies to her. However, she fails to explain why. As we discuss below, *Dynamex* is not applicable to the instant action.[8]

In *Dynamex*, the California Supreme Court adopted a new framework (the ABC test) for determining whether workers are employees or independent contractors for the purpose of applying wage orders adopted by California's Industrial Welfare Commission (IWC). (*Dynamex*, *supra*, 4 Cal.5th at p. 957.) Before *Dynamex*, courts followed the rule set out in *S.G. Borello & Sons, Inc. v. Department of Industrial Relations* (1989) 48 Cal.3d 341 (*Borello*), commonly referred to as the *Borello* test.

In *Dynamex*, the trial court certified a class of delivery drivers who believed they had been improperly classified as independent contractors by their defendant employer. The drivers maintained the allegedly improper classification violated a state wage order, and they also asserted various claims that were not based on the wage order. (*Dynamex*, *supra*, 4 Cal.5th at p. 914.)

In a writ proceeding brought by the employer, the Court of Appeal held the wage order definitions of " 'employ' " and " 'employer' " were applicable to the employee/independent contractor question with respect to obligations arising out of the wage order. (*Dynamex*, *supra*, 4 Cal.5th at p. 915.) The

---

[8] Relying on Ninth Circuit case law, Anderson contends *Dynamex*, *supra*, 4 Cal.5th 903 should be applied retroactively. We are not obligated to follow federal appellate court authority. (Cf. *People v. Figueroa* (1992) 2 Cal.App.4th 1584, 1587.) In any event, because we determine that *Dynamex* does not apply here, we assume for purposes of our analysis, for this opinion only, that it applies retroactively. However, we underscore that this is merely an assumption for the current case and should not be read as our conclusion that *Dynamex* does apply retroactively. We offer no opinion on that issue here.

Court of Appeal also held, however, that the *Borello* standard applied to plaintiffs' non-wage order causes of action. (*Id.* at pp. 915-916.) Later, when the defendant filed a petition for review in the Supreme Court, it challenged only the Court of Appeal's conclusion that the wage order definitions were applicable to the employee/independent contractor determination under the wage order claims. (*Id.* at p. 916 & fn. 5.) In other words, the Court of Appeal's holding that *Borello* applied to the non-wage order claims went unchallenged.

In holding the ABC test applied to the drivers' wage order-related claims, our Supreme Court repeatedly referred to the narrow scope of the defendant's petition (*Dynamex, supra,* 4 Cal.5th at pp. 916, 942) and stressed the correspondingly narrow scope of its own holding. (*Id.* at pp. 913-914 ["Here we must decide what standard applies, under California law, in determining whether workers should be classified as employees or as independent contractors *for purposes of California wage orders . . . .*"].) In reaching its decision, the California Supreme Court did not overrule or criticize *Borello*. To the contrary, the court repeatedly stated that *Borello* is the "seminal" California decision on how to distinguish between employees and independent contractors. (*Dynamex,* at pp. 915, 929.)

Thus, although *Dynamex* changed the appropriate standard for determining whether an individual is an employee entitled to wage order protection or an independent contractor who is not, it does not hold the ABC test applies to a plaintiff's non-wage order claims. In *Dynamex*'s wake, appellate courts have accordingly limited the application of the ABC test to wage order related claims only. (See, e.g., *Garcia v. Border Transportation Group, LLC* (2018) 28 Cal.App.5th 558, 570-571 [holding *Dynamex*'s ABC test applied only to the plaintiff's wage order related claims but *Borello*'s multi-

15

factor common law test applied to the plaintiff's non-wage order related claims].)

Here, Anderson never asserted a wage order based claim and the court was never asked to decide a wage order related issue. Nevertheless, for the first time on appeal, Anderson insists that she "is covered by Wage Order No. 4-2001, Cal. Code Regs., tit. 8, § 11090" and then argues the court erroneously found in favor of KIT on her tenth cause of action. We find Anderson's argument unpersuasive for multiple reasons.

First, Anderson cites a section of the California Code of Regulations that applies to a wage order regulating wages, hours, and working conditions in the transportation industry. (See Cal. Code Regs., tit. 8, § 11090.) There is no indication in the record that Anderson worked in the transportation industry or that KIT is involved in that industry. Instead, it appears Anderson meant to cite to IWC Wage Order No. 4-2001 codified in California Code of Regulations, title 8, section 11040. That regulation relates to the hours and wages of those employed in "Professional, Technical, Clerical, Mechanical, and Similar Occupations."

Second, even if we assume the correct wage order, Anderson's argument still lacks merit. Anderson insists in her opening brief that her tenth cause of action rests on her claim she was not paid under an oral contract at $50 per hour for "additional [DOD] work," arguing "KIT breached the agreement Couron had with Anderson to pay Anderson for her additional [DOD] related work."[9] In other words, Anderson essentially concedes that the tenth cause of action has nothing to do with a wage order. She merely

---

9    As we discuss later, Anderson's tenth cause of action actually appears to be based on a failure to pay wages at the time of termination in violation of Labor Code section 201.

16

cites to a wage order but does not explain how the subject wage order applies to the claim. Anderson's failure to offer any authority or explanation for her claim that the subject wage order applies to her forfeits this contention on appeal. (See *Malibu Hillbillies*, *supra*, 36 Cal.App.5th at p. 146.)

Finally, Anderson's argument on appeal that a certain wage order applies to her is created out of whole cloth. There was no mention of wage orders in the operative complaint. There was no discussion of wage orders at trial. Rather, Anderson's reliance on a wage order now appears to be a last hour attempt to argue her case should be reversed under *Dynamex*, *supra*, 4 Cal.5th 903. As such, her argument is not well taken.

Based on the record before us and the arguments made at trial, *Dynamex* provides no grounds for reversal in the instant matter.

II

INDEPENDENT CONTRACTOR OR EMPLOYEE

A. Anderson's Contentions

Anderson claims the court erred in determining that she was an independent contractor and not an employee of KIT. Because we reject her argument that reversal is warranted under *Dynamex*, *supra*, 4 Cal.5th 903, we turn to Anderson's alternative argument that the court should have found that she was an employee under the *Borello* test.

B. Analysis

We review for substantial evidence the determination of employee or independent contractor status. (*Cristler v. Express Messenger Systems, Inc.* (2009) 171 Cal.App.4th 72, 78 (*Cristler*).) "In reviewing the evidence on appeal, we resolve all conflicts in favor of the prevailing party, and we indulge in all legitimate and reasonable inferences to uphold the finding if possible." (*Air Couriers Internat. v. Employment Development Dept.* (2007)

17

150 Cal.App.4th 923, 937.) "Our power begins and ends with a determination as to whether there is any substantial evidence, contradicted or uncontradicted, that will support the finding. When two or more inferences can be reasonably deduced from the facts, we cannot substitute our own deductions for those of the trial court." (*Ibid*.)

In determining whether a worker is an employee or independent contractor under *Borello*, the primary factor is whether the worker has " ' "the right to control the manner and means of accomplishing the result desired." ' " (*Dynamex, supra*, 4 Cal.5th at p. 922.) The fact-finder must consider the following factors in making its determination: (1) right to discharge at will, without cause; (2) whether the worker is engaged in a distinct occupation or business; (3) whether the work is usually done under the direction of a principal, or by a specialist without supervision; (4) the skill required in the occupation; (5) whether the worker or the principal supplies the instrumentalities, tools, and place of work; (6) the length of time for which the services are performed; (7) whether the worker is paid by time or by the job; (8) whether the work is part of the regular business of the principal; and (9) whether the parties believe they are creating an employer-employee relationship. (*Ibid*.)

Here, there is substantial evidence supporting the court's finding that Anderson was an independent contractor rather than an employee. First, throughout her time providing services for KIT, Anderson held herself out as an independent contractor, not an employee. Indeed, as late as May 29, 2013, in communications with KIT, she referred to herself as an "outside accountant" and "financial consultant." Anderson signed the ICA, which referred to her as an independent contractor. While providing services to KIT, Anderson retained discretion to decide when she would work. In fact,

18

for a period of time during 2006, Anderson elected not to provide any services to KIT because she was "too busy." Anderson received an annual 1099. Anderson had no set hours working for KIT, but instead, "would come in off hours and on the weekend to do [her] work." That said, she was not required to work at KIT's office and would work from home or even from out of state. On the occasions when Anderson chose to work at KIT's office, KIT did not provide her with her own computer. Rather, she used Couron's computer when Couron was not present. KIT did not provide Anderson with any benefits, including health insurance. Anderson did not have a KIT email address. Nor did she have any KIT business cards. And Anderson provided accounting services to other businesses at the time she provided those services to KIT. This considerable amount of evidence supports the court's factual finding that Anderson was an independent contractor.

Nevertheless, Anderson ignores the substantial amount of evidence establishing she was an independent contractor and points to examples of "evidence" she believes supports her argument that she was an employee. However, much of what Anderson relies on is not in the record as it was either excluded at trial or never offered at trial. The failure to cite to actual evidence in the record is fatal to her substantial evidence challenge. (Cf. *Denham*, *supra*, 2 Cal.3d at p. 564; *Ballard v. Uribe* (1986) 41 Cal.3d 564, 574; *Duarte*, *supra*, 72 Cal.App.4th at p. 856; *Malibu Hillbillies*, *supra*, 36 Cal.App.5th at p. 146.) Further even if Anderson cites to contradictory evidence in the record, the existence of that evidence does not compel the conclusion that no substantial evidence supports the court's finding of fact. The court considered all the evidence before it, and we have no authority to "second-guess the conclusion reached by the fact finder; instead, the substantive 'determination (employee or independent contractor) is one of

19

fact and thus must be affirmed if supported by substantial evidence." (*Cristler*, *supra*, 171 Cal.App.4th at p. 78.) Based on the evidence described above, and granting proper deference to the court's weighing of the evidence, we conclude substantial evidence supports the determination that Anderson was an independent contractor and not KIT's employee.

Because we conclude substantial evidence supports the trial court's finding that Anderson was not an employee, we summarily reject Anderson's various arguments challenging the judgment that assume we would determine she was an employee. Specifically, we reject Anderson's arguments that the court erred in finding in favor of KIT on the first through fourth causes of action to the extent Anderson's arguments hinge on her assertion that she was an employee.

III

ANDERSON'S ORAL AGREEMENT REGARDING ADDITIONAL DOD WORK

Anderson maintains the trial court erred in "rejecting the undisputed fact that Couron was in agreement that Anderson was due compensation for [DOD] services performed." She relates this error to her tenth cause of action in the operative complaint. In the tenth cause of action, Anderson alleges KIT violated Labor Code section 201 by failing to pay her all wages she was due on her last day of employment. Yet, Labor Code section 201 only applies to employees. (See Lab. Code, § 201, subd. (a); *Melendez v. San Francisco Baseball Associates LLC* (2019) 7 Cal.5th 1, 5.) Because we determined substantial evidence supports the trial court's conclusion that Anderson was an independent contractor, she is not entitled to relief under Labor Code section 201, and the tenth cause of action must fail.

That said, in her opening brief, Anderson focuses not on the statutory requirements of Labor Code section 201, but instead, she appears to be

20

arguing that the court erred in determining she was not entitled to any payment under her alleged oral agreement to be paid $50 an hour for additional work related to the DOD contract. To this end, Anderson maintains: "On June 21, 2013, KIT breached the agreement Couron had with Anderson to pay Andersson for her additional [DOD] related work." This contention therefore seems to be aimed at the sixth, seventh, eighth, and ninth causes of action that are based, at least in part, on the alleged breach of the oral agreement. Accordingly, we will address Anderson's claims as they relate to the trial court's failure to award her any damages under the oral agreement.

Initially, we note that Anderson's argument here rests on a faulty premise. She claims that it was undisputed that Couron agreed that Anderson was owed money under the oral agreement. However, she provides no citation to the record to support this assertion. This shortcoming forfeits her claim. (See *Malibu Hillbillies*, *supra*, 36 Cal.App.5th at. p. 146.)

Moreover, we find nothing in the record that established Couron stated KIT owed Anderson money for additional DOD work. When asked about Anderson billing for additional DOD work, Couron testified:

> "I asked you [Anderson] to identify the body of work that you were doing under your retainer and if you felt like you were doing additional work, to identify that. Describe it, quantify it, and submit an invoice for additional work, ideally on a monthly basis."

Therefore, it appears Couron agreed that Anderson could submit invoices for work she believed was beyond the typical services she performed under the ICA. Also, the record is clear that Anderson submitted a single invoice on June 17, 2013, the day before the ICA was terminated. Although the invoice does not appear to be in the record, Couron's testimony at trial suggested that the invoice covered work Anderson claimed to have completed

21

over two years before the invoice was submitted.  In addition, Couron did not play a role in determining whether KIT should pay Anderson for the June 17, 2013 invoice, but she admitted that she told someone at KIT that the invoice "should be considered in part."  Nevertheless, KIT did not pay Anderson under the June 17 invoice.

Based on the record before us, we find no support that Couron agreed that Anderson should be paid for the work claimed in the June 17, 2013 invoice.  At most, it appears that Couron told someone (the individual is not identified in the record) at KIT that at least some of the invoice should be considered.  The court denied Anderson damages based on KIT's failure to pay the June 17, 2013 invoice because it believed the invoice was too speculative, covering multiple years.  Indeed, it appears the court found that Anderson's work "could have been invoiced, [but] it wasn't invoiced until the very end."  Alternatively stated, the court found that Anderson did not prove the amount of additional DOD work she completed.  Further, Anderson's own testimony that she did not keep track of her hours on the additional DOD work and could not accurately recreate how many hours she worked also undermines her claim of error:

> "Q.  You never kept track of the hours that you performed doing the [DOD] travel billing work, correct?
>
> "A.  Correct.
>
> "Q.  And you could not accurately go back and recreate how many hours you actually spent doing that work, correct?
>
> "A.  It would be an estimate.

"Q. You couldn't accurately recreate how many hours you spent doing that work, correct?

"A. Okay. Correct."

Anderson also agreed that she did not have documents that would enable her to determine how many hours she worked on the DOD tasks in 2011, 2012, or 2013.

In addition, Anderson admitted she was not a proficient biller. She testified that she was "not a very good biller" and was paid on a "flat fee" because she often billed "at one year at time." Indeed, Anderson reiterated her belief that she was not a good biller in her questioning of Couron: "[D]id I go on a retainer because I'm not very good at billing?"[10]

Based on the record before us, the trial court determined that Anderson had not proven the hours she worked under the subject oral agreement. It made no ruling that the oral agreement was unenforceable. Thus, Anderson's arguments here miss the mark. She does not explain why the court's conclusion that her invoice was speculative was error. She does not point to any evidence in the record establishing the amount of additional DOD work she performed. As such, her challenge to the court's finding that she did not prove she was entitled to additional pay for her DOD work must fail. (See *Denham*, *supra*, 2 Cal.3d at p. 564; *Ballard v. Uribe*, *supra*, 41 Cal.3d at p. 574; *Duarte*, *supra*, 72 Cal.App.4th at p. 856.)

---

[10] Anderson fired her trial counsel during trial and opted to represent herself for the remainder of the trial.

## IV

## ADDITIONAL ARGUMENTS REGARDING THE THIRD CAUSE OF ACTION

At the close of Anderson's case in chief, KIT moved for judgment under Code of Civil Procedure section 631.8. That section provides a procedure in a nonjury trial for a defendant, after the plaintiff rests its case, to request entry of judgment in defendant's favor without the requirement of presenting defense evidence. " 'The purpose of Code of Civil Procedure section 631.8 is "to enable the court, when it finds at the completion of plaintiff's case that the evidence does not justify requiring the defense to produce evidence, to weigh evidence and make findings of fact." [Citation.] Under the statute, a court acting as trier of fact may enter judgment in favor of the defendant if the court concludes that the plaintiff failed to sustain its burden of proof. [Citation.] In making the ruling, the trial court assesses witness credibility and resolves conflicts in the evidence.' " (*Kinney v. Overton* (2007) 153 Cal.App.4th 482, 487.)

The court granted KIT's motion. In doing so, it stated that Anderson could not obtain relief under the third cause of action because she was not KIT's employee. Anderson's third cause of action was for retaliation in violation of the Federal False Claims Act (Act) (31 U.S.C. § 3729 et seq.) Anderson argues that the court erred in so ruling because the Act does not require a plaintiff be an employee. (See 31 U.S.C. § 3730(h)(1).)

As a threshold matter, we note Anderson is correct that the Act does not require that a plaintiff be an employee to obtain relief. Instead, the Act states "[a]ny employee, contractor, or agent shall be entitled to all relief necessary . . . ." (31 U.S.C. § 3730(h)(1).) Nonetheless, KIT asserts this distinction does not matter because the operative complaint made clear that Anderson was seeking "to impose liability based solely on her contention that

she was an employee of KIT." KIT's argument appears to be supported by the allegations of the operative complaint. In the second amended complaint, Anderson alleged that KIT "hired [her] as an Accountant" "in or around 2003" She also averred, no fewer than five times, that "[a]t all times relevant herein, Plaintiff was an employee of Defendants." Although she did not include that allegation in the body of the third cause of action, she did incorporate her previous allegations that she was an employee of KIT into her third cause of action.

However, during opening argument, Anderson's trial counsel made clear that the Act "allows recovery for those who are not employees." Counsel emphasized that Anderson's claim under the Act was her "most important one . . . [because] it allows recovery for those who are not employees." KIT's trial counsel objected to this portion of plaintiff's counsel's opening argument, and Anderson's trial counsel responded that the Act was cited in the complaint. The court overruled the objection, explaining: "It says—I mean, because it says any employee. So I assume that's what it is. Understand. It's opening statement, though. A little leeway. Overruled. Continue."

The issue of whether Anderson was seeking relief under the Act only because she claimed to be KIT's employee does not appear to have been litigated during trial. Neither party points to any portion of the record where this issue was discussed after opening statements. Clearly, KIT took the position at trial that Anderson could only recover if she was an employee. In its motion for judgment, KIT asserted that Anderson could only recover under her third cause of action for retaliation under the Act if she was an employee. In arguing this motion, KIT's trial counsel emphasized "[t]he first four causes of action and tenth cause of action all require as the first element that the plaintiff be an employee." Yet, KIT's trial counsel's argument was

25

legally incorrect.  The Act does not require that a plaintiff be an employee. (See 31 U.S.C. § 3730(h)(1).)

The critical issue, based upon what is pled in the operative complaint and what was stated in opening argument, was whether Anderson should be permitted to pursue her retaliation claim under the Act even if she was not a KIT employee.  Outside of an overruled objection during Anderson's opening statement, the trial court did not appear to specifically address that issue. The Act explicitly allows Anderson to seek relief even if she is not an employee.  Yet, Anderson repeatedly pled in the complaint that she was KIT's employee and was seeking relief based on her assertion of her employee status.  And Anderson was given the opportunity to argue in opposition to the motion for judgment.  But in arguing against the motion, she did not point out that the Act did not require her to be an employee to obtain relief.  Had Anderson made that argument, it would have required the court to address the legal issue and perhaps allow the parties and court to discuss other evidence offered at trial that might have proven Anderson's claim under the Act, even if she was not employee.[11]  However, the argument was not made, and without such an argument or objection to the grounds on which KIT argued judgment was appropriate, the issue was forfeited.  (Cf. *Keener v. Jeld-Wen, Inc.* (2009) 46 Cal.4th 247, 264.)

The importance of the need for Anderson to challenge the trial court's conclusion is underscored by the fact that reversal is not automatically warranted even if we were to determine the trial court erred in finding Anderson had to be an employee to seek relief under the Act.  If a judgment is correct on any theory, the appellate court will affirm it regardless of the trial

---

[11]    At this point, Anderson had fired her trial counsel and was proceeding in pro per.

court's reasoning. (*Estate of Beard* (1999) 71 Cal.App.4th 753, 776-777; *D'Amico v. Board of Medical Examiners* (1974) 11 Cal.3d 1, 18-19.) Thus, even if Anderson was not required to prove she was an employee to seek relief under the Act, she still must show she satisfied the other requirements of that subject cause of action to show reversible error. Nonetheless, in her opening brief, she does not list the elements of her retaliation claim or show how the evidence proffered at trial satisfied those elements.

A retaliation claim under the Act requires proof of three elements: "1) the employee must have been engaging in conduct protected under the Act; 2) the employer must have known that the employee was engaging in such conduct; and 3) the employer must have discriminated against the employee because of her protected conduct."[12] (*United States ex. rel. Hooper v. Anton* (9th Cir. 1996) 91 F.3d 1261, 1269.) Here, we do not find sufficient evidence in the record to support that Anderson was entitled to relief under the Act.

The evidence at trial was undisputed that KIT did not know Anderson had talked to the DOD about her billing concerns before KIT terminated the ICA. Indeed, Anderson agreed at trial that the first time she told anyone at KIT that she had notified the DOD about potential billing issues was on June 18, 2013, after she was informed that KIT was terminating the ICA. Further, there is no evidence that KIT retaliated against Anderson because

---

[12] Again, the statute does not require that Anderson be an employee to seek relief. Although the Ninth Circuit framed the elements in terms of an employment relationship, such a relationship is not required under the Act. (See 31 U.S.C. § 3730(h)(1).)

she was engaging in protected activity.[13]  As such, we determine Anderson's claim under the Act has no merit.

V

SERREPTITIOUS RECORDINGS OF CONVERSATIONS

Penal Code section 632 declares any "electronic . . . recording" of a "confidential communication" "not admissible in any judicial . . . proceeding" unless "all parties" to that communication had consented to the recording. (Pen. Code, § 632, subds. (a) & (d).)  By its plain language, it bars the introduction of such taped telephone conversations into evidence.  (See *Frio v. Superior Court* (1988) 203 Cal.App.3d 1480, 1487-1488 (*Frio*); but see *People v. Guzman* (2019) 8 Cal.5th 673, 681 [inadmissibility rule does not apply to criminal cases because of California Constitution's truth-in-evidence provision].)  In granting two of KIT's motions in limine, the trial court barred Anderson from admitting into evidence tapes from telephone calls she recorded with Williams and a conversation with Couron she recorded.  Anderson maintains the court erred in determining that the taped

---

[13]  Also, under the record before us, it is not clear Anderson had any reason to believe that KIT was billing improperly under the DOD contract. She admitted that she "had been given no role in the [DOD] contract negotiation or billing process."  She never talked to any of the contracting officer representatives for the DOD about billing issues.  Also, KIT took Anderson's billing inquiries seriously and investigated them.  After Anderson made her billing concerns known to KIT, Dunlop contacted Brewer, the contracting officer representative at that time, to address any potential billing issues.  Brewer had no concerns.  KIT's board investigated the billing under the DOD contract and found no issues.  In fact, there was not a scintilla of evidence offered at trial that there was any improper billing under the contract.  Instead, it appears Anderson did not understand how the eLearning CLIN was to be billed, which led her to believe that there might be improper billing.  The record is clear that KIT attempted to explain the eLearning CLIN billing to Anderson on multiple occasions to no avail.

conversations could not be used at trial to refresh the recollection of or impeach a witness.

Here, in ruling on KIT's two motions in limine to exclude the recording of conversations with Williams and Couron, the court explicitly stated that Anderson could not use the tapes to refresh a witness's recollection unless the witness testified that she knew she was being taped. In response, Anderson's trial counsel argued that the tapes could be used to refresh a witness's recollection, even if the witness was not aware she was being taped. The court disagreed, stating that the law dictated that the tapes could only be used to refresh the recollection of a witness if that witness knew she was being recorded. The trial court was incorrect.

Penal Code section 632 does not prevent a party from using non-consensually recorded conversations to refresh a witness's recollection. (*Frio*, *supra*, 203 Cal.App.3d at pp. 1492-1493.) Likewise, that statute does not prohibit the use of such conversations to impeach a witness making statements inconsistent with those conversations. (*Id.* at pp. 1496-1497; *People v. Crow* (1994) 28 Cal.App.4th 440, 452 ["Evidence of confidential conversations obtained by . . . recording in violation of section 632 . . . can be used to impeach inconsistent testimony by those seeking to exclude the evidence."].) The reason for this exception is simple: Penal Code section 632 does not "confer upon a testifying witness the right to commit perjury." (*Frio*, at p. 1497.) Yet, concluding the trial court was not correct in stating that the non-consensually recorded conversations could not be used to refresh a witness's recollection does not end our analysis here. We must still determine whether Anderson was prejudiced by the exclusion of the use of the evidence for the limited purposes of refreshing a witness's recollection and impeachment. Before analyzing prejudice, however, we observe that

29

Anderson has waived and/or forfeited multiple arguments related to the use of the subject tapes.

In the instant matter, Anderson has not addressed the use of the non-consensual recordings of Couron. Thus, she has waived any argument regarding the court's ruling on KIT's motion in limine to exclude the tapes of Anderson's conversation with Couron. (See *Nelson, supra,* 172 Cal.App.4th at p. 862; *Falcone, supra,* 164 Cal.App.4th at p. 830.)

Instead, Anderson focuses her argument of the use of the non-consensual recordings of her telephone conversations with Williams. In doing so, however, she does not explain how she would have used the tapes to refresh Williams's recollection. In the absence of any such discussion, Anderson has waived her argument as to this issue as well. (See *Nelson, supra,* 172 Cal.App.4th at p. 862; *Falcone, supra,* 164 Cal.App.4th at p. 830.)

Anderson does discuss the possibility of using the taped conversations to impeach Williams. However, in arguing against the motions in limine, Anderson's trial counsel never brought up the issue of using the tapes for impeachment. Perhaps, he did not make that argument because the in limine motion was aimed at the admission of the tapes into evidence and not as use for impeachment. That said, there is no indication in the record that Anderson attempted to impeach Williams during her testimony with tapes of their telephone conversations or that the trial court prevented her from doing so. Thus, Anderson forfeited this issue by not raising it below. (See *Steven W. v. Matthew S.* (1995) 33 Cal.App.4th 1108, 1117 ["An appellate court will not consider procedural defects or erroneous rulings where an objection could have been, but was not, raised in the court below."].)

Nevertheless, even if we assume the issue was properly preserved for appeal, we would conclude reversal is not warranted because Anderson has

not shown she was prejudiced by the alleged error. Prejudice is not presumed, and the appellant bears the burden of establishing that the trial court's ruling was prejudicial. (Cf. *People ex rel. City of Santa Monica v. Gabriel* (2010) 186 Cal.App.4th 882, 887.)

At trial, Anderson called Williams as a witness during her case in chief. Among other topics, Williams testified that Anderson contacted her by telephone and told her that she believed "some services [were] being done or billed that weren't done" under KIT's contract with the DOD. Williams told Anderson that Brewer was the contracting officer on behalf of the DOD. Williams explained that she relayed the information Anderson provided to her boss. In response, Williams's boss asked her if Anderson provided any documentation to support her claim. Williams's boss instructed her to talk to a specific legal counsel. Williams testified that Anderson told her during their first conversation that "if there are [*sic*] billing that's not done, it's fraud or defective billing."

Williams also testified that she believed she talked to Anderson about seven or eight times. Williams stated that every time she spoke with Anderson, she asked her to provide documentation. "I kept begging her to send me some kind of documentation . . . ." According to Williams, the essence of Anderson's complaint was "[t]hat service being done was not done but we [the DOD] were being charged." In addition, Williams described Anderson as "irritated and demanding" during their final call. Anderson told Williams that "she was going to go to the media." Williams admitted that she was instructed by legal counsel not to talk to Anderson anymore because Anderson had not provided any documentation to support her claim.

Williams further testified that the eLearning CLIN in the present contract between the DOD and KIT was a firm fixed price.

After Williams was cross-examined by KIT's trial counsel, Anderson's trial counsel declined to ask any additional questions.

In arguing that the court erred in not allowing her to use tapes of her conversations with Williams, Anderson does not discuss Williams's testimony. She does not claim that Williams lied on the stand. At most, she quotes from what she represents is a single statement made on one of the tapes, but she does not explain the significance of that statement or how it would have impeached Williams.[14] She also baldly asserts: "The inability to question Williams about the conversations in June 2013 was devastating to Anderson's case." This assertion is puzzling. Anderson called Williams as a witness and had ample opportunity to question her about the subject conversations. Indeed, Anderson's trial counsel did so. Anderson does not cogently explain how she could have used the tapes for impeachment purposes or how they prevented her trial counsel from effectively questioning Williams at trial. In short, she has not shown she was prejudiced by the trial court's ruling.[15]

VI

THE COURT'S ALLEGED BIAS AGAINST ANDERSON

Every litigant has a due process right to an impartial decisionmaker. (*People v. Peoples* (2016) 62 Cal.4th 718, 788; *Today's Fresh Start, Inc. v. Los*

---

[14] Neither the tape nor a transcript of the tape is in the record.

[15] In the opening brief, Anderson notes that "Williams was in Tennessee, a one-party consent state, at the time of the phone calls." Anderson makes no further arguments regarding the fact that Williams was in Tennessee during the telephone calls with Anderson. To the extent she is trying to argue Penal Code section 632 did not apply because of this fact, she has waived that argument by failing to provide any authority to support her position or otherwise explain the significance of this fact. (See *Nelson, supra,* 172 Cal.App.4th at p. 862; *Falcone, supra,* 164 Cal.App.4th at p. 830.)

*Angeles County Office of Education* (2013) 57 Cal.4th 197, 212.) Due process requires judicial disqualification only under the " 'most "extreme facts." ' " (*People v. Cowan* (2010) 50 Cal.4th 401, 456-457.) To establish a due process violation, the appellant has the burden of showing " ' " 'the probability of actual bias on the part of the judge.' " ' " (*Id.* at p. 456; *Peoples*, at p. 787.) "The appellate court's role is not to examine whether the trial judge's behavior left something to be desired, or whether some comments would have been better left unsaid, but to determine whether the judge's behavior was so prejudicial it denied the party a fair . . . trial. [Citation.] Mere expressions of opinion, based on observation of the witnesses and evidence, do not demonstrate judicial bias. [Citation.] Numerous and continuous rulings against a party are not grounds for a finding of bias. [Citation.] [¶] A constitutional finding of judicial . . . bias is appropriate only when 'extreme facts' demonstrate a probability of actual bias. [Citation.]" (*Schmidt v. Superior Court* (2020) 44 Cal.App.5th 570, 589.)

In the instant action, Anderson offers a litany of examples she claims indicate the trial court was biased against her. For example, she notes that the court denied "on three different occasions" Anderson's request for an extension of the discovery cutoff date. Anderson also maintains KIT "continually slandered" her, which she claims somehow shows judicial bias. Anderson insists the trial court evidenced its bias during the arguments on motions in limine because it was concerned a crime was committed when Anderson taped certain conversations without the other party's consent. In addition, Anderson contends the court stated that it had read KIT's motion for judgment but did not have time to do so. She also claims the court's factual and credibility findings at trial showed the court's bias as well.

Essentially, Anderson asserts that the court's repeated findings against her prove it was biased.

Further, through the guise of alleged judicial bias, she appears to challenge the court's award of attorney fees as well as an order on a discovery motion.[16] And she claims, after she fired her attorney during trial, the court "rushed [her] into finishing her questioning of Couron" and refused to allow Anderson to call a witness who was not available until the next morning.

There is a general rule that a party forfeits a claim of judicial misconduct by failing to object to the conduct and seek relief in the trial court. (*People v. Sturm* (2006) 37 Cal.4th 1218, 1237; see *Moulton Niguel Water Dist. v. Colombo* (2003) 111 Cal.App.4th 1210, 1218 [appellate claim of judicial bias forfeited because party did not object to judge's "alleged improprieties" or seek correction below].) Here, Anderson forfeited her claim of judicial bias by failing to raise it below.

Further, even if we ignore forfeiture, the record before us falls woefully short of showing anything approaching judicial bias. Most of Anderson's bias allegations do not relate to statements the court made on the record. Rather, Anderson assumes bias merely from the rulings made in KIT's favor. A trial court's rulings against a party do not establish judicial bias. (*Andrews v. Agricultural Labor Relations Bd.* (1981) 28 Cal.3d 781, 795-796; see *People v. Fuiava* (2012) 53 Cal.4th 622, 732 [" '[A] trial court's numerous rulings against a party—even when erroneous—do not establish a charge of judicial bias, especially when they are subject to review.' [Citation.]"].)

---

16    Even if we assume these orders were appealable, Anderson waived any challenge to them by not filing a timely appeal. She cannot avoid this waiver simply by claiming that the allegedly erroneous orders are the product of judicial bias.

Additionally, we find no support in the record for Anderson's claim that the court rushed her to finish her questioning of Couron. And although the court told her waiting to the next day to call a witness who was out of town was a "[n]o go," Anderson does not identify or explain the significance of this witness in her opening brief. Our review of the record indicates that the witness in question was a woman named Jill Haynie. As best we can glean from the record, Anderson contacted Haynie "for some direction" regarding the implementation of government contracts in general. There is no indication in the record that Haynie was affiliated in any way with KIT or the DOD. Nor does there appear to be any evidence that Haynie had any knowledge about the contract between KIT or the DOD. Anderson has not cited to any proposed witness list that included Haynie. Instead, it appears she only asked to call her at the very end of her case in chief. Simply put, we see nothing that even hints that the court's unwillingness to wait another day so Anderson could call Haynie exhibits judicial bias.

## VII

### THE EXCLUSION OF CERTAIN EXHIBITS OFFERED BY ANDERSON

Anderson's final argument is that the trial court erred in not admitting certain exhibits that KIT claimed were stolen.[17] Anderson also claims that she did not submit certain exhibits and the court did not admit certain exhibits because of the time limits the court placed on trial.

Typically, we review the trial court's evidentiary determinations for abuse of discretion. (*Maatuk v. Guttman* (2009) 173 Cal.App.4th 1191, 1197.)

___

[17] Anderson's reference to "stolen" documents stems from KIT's claim that Anderson took KIT's private, confidential, and proprietary documents when she downloaded the entire contents of Couron's computer. KIT moved to compel Anderson to return the subject documents, and the court issued various orders to return the documents. None of those orders are before us.

Yet, here, we do not reach the merits of Anderson's challenges, which consist merely of conclusions without citations to the record or legal authority. "To demonstrate error, appellant must present meaningful legal analysis supported by citations to authority and citations to facts in the record that support the claim of error. (*City of Lincoln v. Barringer* (2002) 102 Cal.App.4th 1211, 1239, fn. 16; *In re Marriage of Nichols* (1994) 27 Cal.App.4th 661, 672-673, fn. 3.) When a point is asserted without argument and authority for the proposition, 'it is deemed to be without foundation and requires no discussion by the reviewing court.' (*Atchley v. City of Fresno* [ (1984) ] 151 Cal.App.3d [635,] 647; accord, *Berger v. Godden* [ (1985) ] 163 Cal.App.3d [1113,] 1117 ['failure of appellant to advance any pertinent or intelligible legal argument . . . constitute[s] an abandonment of the [claim of error'].)" (*In re S.C.* (2006) 138 Cal.App.4th 396, 408.) Anderson's legally unsupported and conclusory arguments have not properly tendered the issues for review.

## DISPOSITION

The judgment is affirmed.  KIT is entitled to its costs on appeal.


                                                    HUFFMAN, J.

WE CONCUR:



BENKE, Acting P. J.



IRION, J.